**No. 2026-140**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

IN RE: CORE SCIENTIFIC, INC.,

*Petitioner.*

On Petition for a Writ of Mandamus to the United States District Court
for the Eastern District of Texas
No. 2:25-cv-00519-JRG-RSP
Hon. J. Rodney Gilstrap, District Judge

## MALIKIE INNOVATIONS LTD. AND KEY PATENT INNOVATIONS LTD.'S OPPOSITION TO PETITION FOR A WRIT OF MANDAMUS

Brian C. Baran
Philip J. Eklem
REICHMAN JORGENSEN
 LEHMAN & FELDBERG LLP
1909 K St. NW, Suite 800
Washington, DC 20006
(202) 894-7310
bbaran@reichmanjorgensen.com

Khue V. Hoang
REICHMAN JORGENSEN
 LEHMAN & FELDBERG LLP
650 Fifth Avenue, Suite 2320
New York, NY 10019
(212) 381-1965
khoang@reichmanjorgensen.com

Matthew G. Berkowitz
REICHMAN JORGENSEN
 LEHMAN & FELDBERG LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
(650) 623-1401
mberkowitz@reichmanjorgensen.com

*Counsel for Respondents*
*Malikie Innovations Ltd. and Key Patent Innovations Ltd.*

# CERTIFICATE OF INTEREST

Counsel for Malikie Innovations Ltd. and Key Patent Innovations Ltd. certify under Federal Circuit Rule 47.4 that the following information is accurate and complete to the best of their knowledge:

1.  The full names of the entities represented by undersigned counsel in this case are Malikie Innovations Ltd. and Key Patent Innovations Ltd.

2.  Malikie Innovations Ltd. and Key Patent Innovations, Ltd. are the real parties in interest. There are no other real parties in interest.

3.  Malikie Innovations Ltd. is a wholly owned subsidiary of Key Patent Innovations Ltd. Key Patent Innovations Ltd. is a wholly owned subsidiary of New PP Licensing LLC. No other entity is a parent corporation for or publicly held company owning 10% or more stock in Malikie Innovations Ltd. or Key Patent Innovations Ltd.

4.  Other than those who have already entered an appearance in this Court, the following law firms, partners, and associates (a) appeared for Malikie Innovations Ltd. and Key Patent Innovations, Ltd. in the originating court or (b) are expected to appear in this Court:

REICHMAN JORGENSEN LEHMAN & FELDBERG LLP: Courtland L. Reichman, Christine E. Lehman, Patrick R. Colsher, Michael M. Polka, Michael Caulkins

MILLER FAIR HENRY PLLC: Andrea L. Fair, Claire A. Henry, Garrett C. Parish

5.  The related or prior cases relevant to this appeal are listed on a separately filed notice.

6.  No additional information is required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) or 26.1(c) (bankruptcy case debtors and trustees).

Dated: May 20, 2026          /s/ *Khue V. Hoang*
                              Khue V. Hoang

**TABLE OF CONTENTS**

STATEMENT OF RELATED CASES ......................................................vii

INTRODUCTION ........................................................................... 1

BACKGROUND...............................................................................3

    A. Malikie sues in the Eastern District of Texas, where venue is undisputedly proper. ......................................................3

    B. Core moves for a convenience transfer to the Western District, contending that it relocated its allegedly infringing activities there. ..............................................................3

    C. Malikie amends its complaint, asserting another patent with allegations concededly tied to the Eastern District. ......................5

    D. Relying only on the original complaint, the district court finds that Core failed to prove that the Western District is "clearly more convenient." ..............................................................6

    E. Meanwhile, Core files a third-party complaint involving its Eastern District operations...........................................................9

REASONS FOR DENYING THE PETITION ........................................10

  I. Core Has No Clear and Indisputable Right to Mandamus. .............10

    A. The district court was well within its discretion in evaluating the disputed factors. ..............................................................12

       1. The district court did not clearly abuse its discretion in finding that the local interest factor was neutral. ..................12

       2. The district court did not clearly abuse its discretion in evaluating judicial economy. ..................................................18

       3. The district court did not clearly abuse its discretion in evaluating availability of compulsory process, witness convenience, and access to proof. ............................................21

    B. The district court was well within its discretion in weighing— and not merely counting—the factors. ........................................26

  II. Mandamus Is Not Appropriate Under the Circumstances. .............27

    A. Core's neglect of the "appropriate under the circumstances" requirement is reason enough to deny mandamus. ......................28

    B. Mandamus is inappropriate in light of the amended and third-party complaints filed after briefing concluded. ..........................30

CONCLUSION ..................................................................................34

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Abbott Labs.*,
96 F.4th 371 (3d Cir. 2024) ................................................................ 13

*In re Acer Am. Corp.*,
626 F.3d 1252 (Fed. Cir. 2010) ..................................................... 13, 15

*In re Al-Nashiri*,
835 F.3d 110 (D.C. Cir. 2016) ........................................................... 13

*In re Apple Inc.*,
52 F.4th 1360 (Fed. Cir. 2022) ......................................................... 21

*In re Apple Inc.*,
979 F.3d 1332 (Fed. Cir. 2020) ..................................................... 28-30

*Athena Diagnostics, Inc. v. Mayo Collaborative Servs., LLC*,
915 F.3d 743 (Fed. Cir. 2019) ........................................................... 16

*Cerence Operating Co. v. Samsung Elecs. Co.*,
2025 WL 755219 (E.D. Tex. Mar. 10, 2025), *adopted*, 2025
WL 2492472 (E.D. Tex. July 25, 2025) ............................................. 20

*In re Chamber of Com. of the U.S.*,
105 F.4th 297 (5th Cir. 2024) ............................................... 11, 14, 26

*Cheney v. U.S. Dist. Ct. for D.C.*,
542 U.S. 367 (2004) ........................................................... 1, 10, 27-31

*In re Clarke*,
94 F.4th 502 (5th Cir. 2024) ................................... 11, 13, 16, 19, 26

*Continental Grain Co. v. Barge FBL-585*,
364 U.S. 19 (1960) ........................................................................ 8, 19

*Def. Distributed v. Bruck*,
30 F.4th 414 (5th Cir. 2022) ............................................................ 18

*In re EMC Corp.*,
501 F. App'x 973 (Fed. Cir. 2013)..............................................14, 17-18

*Garcia v. Orta*,
47 F.4th 343 (5th Cir. 2022) ........................................................ 16

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009) .................................................... 30

*In re Google LLC*,
2021 WL 4592280 (Fed. Cir. Oct. 6, 2021) (per curiam) ................... 20

*In re Google LLC*,
2021 WL 5292267 (Fed. Cir. Nov. 15, 2021) (per curiam) ................ 18

*In re Google LLC*,
58 F.4th 1379 (Fed. Cir. 2023)..................................................... 23

*Smith ex rel. Hicks v. McDonough*,
112 F.4th 1357 (Fed. Cir. 2024).................................................... 30

*Hoffman v. Blaski*,
363 U.S. 335 (1960) ................................................................... 17

*Kranos IP Corp. v. Riddell Inc.*,
2017 WL 3704762 (E.D. Tex. Aug. 28, 2017) .................................. 24

*In re McGraw-Hill Glob. Educ. Holdings*,
909 F.3d 48 (3d Cir. 2018) ......................................................... 29

*In re Monolithic Power Sys., Inc.*,
50 F.4th 157 (Fed. Cir. 2022) (per curiam) ..................................10-11

*In re Nintendo Co.*,
589 F.3d 1194 (Fed. Cir. 2009) .................................................... 30

*In re Planned Parenthood Fed. of Am., Inc.*,
52 F.4th 625 (5th Cir. 2022) .....................................................23, 25

*Prism Techs. LLC v. Sprint Spectrum L.P.*,
849 F.3d 1360 (Fed. Cir. 2017) .................................................... 24

*In re Radmax Ltd.*,
720 F.3d 285 (5th Cir. 2013) (per curiam) ........................21, 23, 26-27

*In re RingCentral, Inc.*,
   2023 WL 6368336 (Fed. Cir. Sept. 29, 2023) ...................................... 17

*In re Samsung Elecs. Co.*,
   2 F.4th 1371 (Fed. Cir. 2021)..................................................... 13, 17, 31

*In re SAP Am., Inc.*,
   133 F.4th 1370 (Fed. Cir. 2025) (per curiam) ...................................... 19

*SME Steel Contractors, Inc. v. Seismic Bracing Co.*,
   2025 WL 2057365 (Fed. Cir. July 23, 2025) ...................................... 16

*In re TikTok, Inc.*,
   85 F.4th 352 (5th Cir. 2023) ..................................................24-25

*In re TS Tech USA Corp.*,
   551 F.3d 1315 (Fed. Cir. 2008) ..................................................29-30

*Van Dusen v. Barrack*,
   376 U.S. 612 (1964) ............................................................... 26

*In re Verinata Health, Inc.*,
   2017 WL 1422489 (Fed. Cir. Mar. 9, 2017) (per curiam) .................. 13

*In re Vistaprint Ltd.*,
   628 F.3d 1342 (Fed. Cir. 2010) ..................................11-12, 19, 26-27

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008) (en banc)..................10-11, 22, 28, 30-31

*In re Volkswagen of America, Inc.*,
   566 F.3d 1349 (Fed. Cir. 2009) ....................................................... 19

## Statutes

28 U.S.C. §1404(a) ............................................................. *passim*

## Rules

Fed. R. Civ. P. 12(b)(6) ...................................................... 3, 5

Fed. R. Civ. P. 72(a)........................................................... 16, 24

**Other Authorities**

Petition for Writ of Mandamus, *In re Apple Inc.*,
  979 F.3d 1332 (Fed. Cir. 2020) (No. 20-135), Dkt.2-1 ........................ 28

Non-Confidential Response to Petition for Writ of Mandamus, *In re Apple Inc.*, 979 F.3d 1332 (Fed. Cir. 2020) (No. 20-135), Dkt.34 ........... 29

## STATEMENT OF RELATED CASES

No appeal was previously taken from the underlying proceeding.

The patents asserted in the underlying case overlap with those asserted in *Malikie Innovations Ltd. v. MARA Holdings*, No. 7:25-cv-00222-DC-DTG (W.D. Tex.), and *Malikie Innovations Ltd. v. Foundry Digital LLC*, No. 7:25-cv-00567-DC-DTG (W.D. Tex.).

## INTRODUCTION

Petitioner Core Scientific, Inc. asks this Court to look back to a no-longer-operative complaint, override the district court's careful assessment of a now-outdated factual picture, and order a transfer to the district next door—all without considering the operative pleadings that root this case even deeper in the plaintiffs' chosen forum. The Court should decline to use "one of the most potent weapons in the judicial arsenal" this way. *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004) (cleaned up). The district court faithfully applied the law governing transfers under 28 U.S.C. §1404(a) and reached a result that falls comfortably within its discretion.

The district court reasonably found that Core failed to prove that the Western District of Texas is a clearly more convenient forum than the Eastern District. The bulk of the traditional factors are a wash: Core's infringing activities in both districts give them similar local interests, and neither district has any real advantage on the judicial economy front. True, a sliver of physical evidence is in the Western District, and Core has five employee witnesses there. But all the rest of the evidence is equally accessible, and the Eastern District is just as or more convenient for every other witness. Balancing all those considerations, the court was well within its discretion to find Core's showing insufficient.

Core comes to this Court with a grab bag of complaints about the district court's analysis—fighting five of the eight factors, including

1

squabbles over their degree rather than their direction. At the heart of those complaints is Core's view that its past infringement in the Eastern District that gave rise to this suit must be discounted in favor of its current and future infringement in the Western District. Neither the law nor the record supports anything of the sort. Which leaves Core with a scattering of purported legal errors that came at its invitation and without its objection and, in any event, lack support in binding precedent or the record. Equally unavailing are Core's attempts to fight the district court's factfinding. As the court reasonably recognized, the record refutes Core's narrative.

But even if Core could establish a clear and indisputable right, mandamus would still be inappropriate here. Core does not even attempt to explain why mandamus is appropriate under the circumstances. Nor could it. The now-operative amended complaint and Core's own third-party complaint—both filed after the close of briefing on the transfer motion—cement this case's foundation in the Eastern District. And it is the operative pleadings that matter. So even if Core had identified a clear and indisputable error in how the district court analyzed the dispute based on the original complaint, these developments made any error harmless. Correcting the court's discussion of stale facts is not what mandamus is for. The petition should be denied.

## BACKGROUND

### A. Malikie sues in the Eastern District of Texas, where venue is undisputedly proper.

Plaintiffs Malikie and Key Patent (together, "Malikie"), Irish entities headquartered in Ireland, brought this patent infringement suit in May 2025 against Core Scientific, Inc., a Delaware corporation now headquartered in Florida. Appx26-27; Pet.19 n.6. Malikie seeks damages for Core's infringement since January 2024, when Core emerged from bankruptcy. Appx50(¶44).

Malikie filed in the Eastern District of Texas, alleging that Core engaged in infringing cryptocurrency mining operations there. Appx74-76(¶¶110-16). There is no dispute that venue is proper and that Core is subject to personal jurisdiction in the Eastern District.

### B. Core moves for a convenience transfer to the Western District, contending that it relocated its allegedly infringing activities there.

In July 2025, Core moved to dismiss under Rule 12(b)(6). Appx19 (Dkt.20). A few days later, Core moved under §1404(a) for a convenience transfer to the Western District of Texas. Appx20 (Dkt.23).

Despite contending that "no party has relevant ties" to the Eastern District, Core acknowledged that the alleged infringement—involving its bitcoin mining operations—had "historically" occurred at its Denton County data center in the Eastern District, among other facilities. Appx291-294. *See also* Appx293 (Core operates ten U.S. data centers,

including its Denton facility). Core acknowledged that some employees who worked on bitcoin mining at the Denton facility during the period of alleged infringement still work there. Appx311(¶14); *accord* Pet.5 ("Denton mining technicians" who stayed "transitioned to new roles"). And Core acknowledged that the relevant documentary evidence and source code is stored on Core's company "share drive," Appx313(¶23), and so is just as accessible in the Eastern District as anywhere else with an internet connection. Appx5-6; Appx780 (no dispute about accessibility).

Core's main gripe with the Eastern District was that it wound down its bitcoin mining operations in Denton in late 2024—just a few months before Malikie sued—as part of its "strategic transition" to housing "high performance computing (HPC)" machines there "for third-party customers" to "support[] artificial intelligence-related workloads." Appx292-295 (cleaned up). Meanwhile, Core has continued to mine bitcoin in the Western District. Appx299-300. So although Core's "alleged acts of infringement" had concededly "occurred at one time in EDTX," Appx778, Core insisted that because "none of the allegedly infringing activity" was "currently tak[ing] place" there, the Eastern District no longer had any connection to this suit, Appx299.

Otherwise, Core's motion rested on its assertion that five of its preferred employee witnesses are based at its Austin campus in the Western District, Appx302-303, while its employees and former employees in the Eastern District who worked on bitcoin mining are

4

mostly "lower-level employees" whose jobs "do not require a college degree" and who it therefore assumes cannot speak to the "complex mathematical algorithms covered by the asserted patents," Appx781 & nn.5-6.

The parties conducted venue discovery, SAppx1-2, and wrapped up briefing in October 2025, Appx21.

## C. Malikie amends its complaint, asserting another patent with allegations concededly tied to the Eastern District.

In November 2025, before any ruling on transfer, Malikie sought leave to amend its complaint. SAppx7-8. The district court granted leave in February 2026, SAppx91, and the amended complaint is now Malikie's operative pleading, SAppx18-90.

The amended complaint adds a patent (the '039 patent) and alleges that Core infringes that patent through both its bitcoin mining and HPC operations. SAppx7-8; SAppx73-75(¶¶114-19); SAppx86-88(¶¶165-72). The amended complaint also adds allegations that Core infringes the previously asserted '286 patent through its HPC operations in addition to its bitcoin mining. SAppx8; SAppx85-86(¶¶157-64). The accused HPC operations include those that Core admits are ongoing at its Denton facility in the Eastern District.

Core responded by renewing its Rule 12(b)(6) motion. Appx23 (Dkt.79). But Core did not refile or amend its transfer motion and did not

otherwise address whether or how the amended complaint affected the transfer analysis.

### D. Relying only on the original complaint, the district court finds that Core failed to prove that the Western District is "clearly more convenient."

The magistrate judge denied transfer in a March 2026 order. Appx13. After Core objected, the district court reviewed the order, "agree[d] with" the magistrate judge's reasoning, and found that Core failed to show that the order "was clearly erroneous or contrary to law." Appx1. The court therefore overruled Core's objections and adopted the magistrate judge's order. *Id.*

Applying Fifth Circuit law, the district court analyzed the §1404(a) factors and found that Core failed to prove that the Western District "is clearly more convenient." Appx13. The court discussed only Malikie's initial complaint and the parties' related briefing; there is no indication that it considered the amended complaint's impact. Appx2-13.

The court reviewed deposition testimony and Core documents to find that the first private interest factor—access to sources of proof—only slightly favored transfer. Appx5-6. The court found that most of the evidence is stored on Core's cloud servers and so is equally accessible in both districts by Core's own admission. Appx6. The only weight on the other side of the scale was that the accused mining machines are available to inspect at Core's Western District data center. *Id.* But the court found that "any purported benefit to being able to inspect the

machines … is minimal," reasoning that Malikie's "infringement read depends on functionality that is controlled by software and firmware" that is undisputedly stored on Core's cloud servers or available from public websites and is thus "equally accessible" from either district. *Id.*

The court found that the second private interest factor—availability of compulsory process for unwilling witnesses—weighed against transfer. Appx6-8. It found that Core had not identified any unwilling witnesses, while Malikie had identified over a dozen Core employees with relevant knowledge who worked at the Denton facility, at least nine of whom are former employees outside Core's control. Appx6-7. It also found that Malikie had identified knowledgeable third-party witnesses at BlackBerry (a predecessor-in-interest to the asserted patents) and PPS (Malikie's licensing advisor), both in the Eastern District. Appx7. Although the court recognized that the witnesses were within both districts' subpoena power, it found that they would need to "travel significantly less distance to get to Marshall" than to Austin. Appx7.

Next, the court found that the third private interest factor—cost of attendance for willing witnesses—only slightly favored transfer. Appx8-9. On the one hand, the court afforded "some weight" to the convenience of Core's five employee witnesses who live in Austin. Appx9. On the other hand, it applied the Fifth Circuit's 100-mile rule to find that it would be "marginally less expensive" for Malikie's employee witnesses to travel from Ireland to Marshall. *Id.* Applying the same rule, the court found

that Core's two employees outside Austin "effectively cancel each other out." *Id.* The scales thus tipped in favor of transfer, but not by much. *Id.*

The court next found that the "practical problems" factor was neutral. Appx9-10. After Core abandoned other arguments, Core was left with its assertion that Malikie's pending suit against another defendant in the Western District—filed the same day as this one—justified transfer. *Id.* The court disagreed because "Core ha[d] not argued that the parallel case" involved "'precisely the same issues' within the meaning of" *Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960). Appx10.

Turning to the public interest factors, Core conceded, and the court accepted, that all but local interests were neutral. Appx11-13. The court found that the local interest factor, too, was neutral. *Id.* While acknowledging that Core had "moved any allegedly infringing machines away from this District," the court emphasized that Core "cannot hide from the fact that a significant share of the alleged infringement giving rise to this suit occurred" in the Eastern District. Appx12. The Eastern District's resulting local interest was offset, however, by the court's finding that "a similar share of infringing activity also occurred in the [Western District] and continues to occur there." Appx12-13.

Putting it all together, one factor disfavored transfer, two slightly favored transfer, and the rest were neutral. The court, "[h]aving reviewed each factor, on balance," found that Core had not met its "substantial burden." Appx5, Appx13.

### E. Meanwhile, Core files a third-party complaint involving its Eastern District operations.

Three days after the magistrate judge denied its transfer motion, Core filed a third-party complaint against CoreWeave, Inc. Core alleges that it is "entitled to indemnification from CoreWeave through one or more agreements" granting "CoreWeave a license to use [Core's] data center(s) for CoreWeave's HPC operations." SAppx94(¶2). Core alleges that in February 2025, it and CoreWeave "announced a $1.2 billion expansion" at Core's Denton facility "to meet CoreWeave's growing need for robust, high-density infrastructure to support its HPC operations." SAppx97(¶15). As part of that deal, Core contends, "CoreWeave has installed HPC devices and equipment" in Core's "Denton, Texas data center." SAppx98(¶16). And Core alleges that Malikie's "infringement contentions for the '286 and '039 Patents specifically target CoreWeave and the [HPC] devices hosted at [Core's] facilities," including in the Eastern District. SAppx98(¶¶16-17).

Because CoreWeave was not yet in the case, venue discovery did not address its presence in the Eastern District.

***

Two weeks after the district court's order, Core sought mandamus. Its petition ignores the amended and third-party complaint. This Court ordered that any response and reply "should address the relevance, if any, of" those pleadings. Dkt.7.

## REASONS FOR DENYING THE PETITION

Mandamus is "a drastic and extraordinary remedy" justified "only [by] exceptional circumstances amounting to a judicial usurpation of power or a clear abuse of discretion." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004) (cleaned up). Because "the writ is one of the most potent weapons in the judicial arsenal, three conditions must be satisfied before it may issue." *Id.* (cleaned up). First, the petitioner "must have no other adequate means to attain the relief" requested. *Id.* at 380-81 (cleaned up). Second, the petitioner must demonstrate a "clear and indisputable" "right to issuance of the writ." *Id.* at 381 (cleaned up). And third, "even if the first two prerequisites have been met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *Id.*

Core falls far short of meeting these requirements. It cannot establish a clear and indisputable right to relief. And it has not even attempted to show that mandamus is appropriate under the circumstances, which include Malikie's now-operative amended complaint and Core's own third-party complaint—both of which tilt the scales even further toward the Eastern District.

## I. Core Has No Clear and Indisputable Right to Mandamus.

Core bore the burden to prove that the Western District was "clearly more convenient" than the Eastern District. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc); *see In re Monolithic*

10

*Power Sys., Inc.*, 50 F.4th 157, 161 (Fed. Cir. 2022) (per curiam) (regional circuit law governs). To meet that standard, Core needed to prove both "that the marginal gain in convenience" in its preferred forum "will be *significant*" and "that its evidence makes it plainly obvious—*i.e.*, clearly demonstrated—that those marginal gains will *actually* materialize in the transferee venue." *In re Chamber of Com. of the U.S.*, 105 F.4th 297, 304 (5th Cir. 2024) (attribution omitted); *see also In re Clarke*, 94 F.4th 502, 508 n.3 (5th Cir. 2024) ("[A] mere preponderance of the evidence is insufficient."). Without such a showing, Malikie's "choice should be respected." *Volkswagen*, 545 F.3d at 315.

To guide district courts' analysis, the Fifth Circuit has adopted a now-familiar set of factors. *Volkswagen*, 545 F.3d at 315. Although they "are appropriate for most transfer cases," the factors "are not necessarily exhaustive or exclusive," and none is dispositive. *Id.*

District courts have "broad discretion in transfer decisions." *In re Vistaprint Ltd.*, 628 F.3d 1342, 1344 (Fed. Cir. 2010) (applying Fifth Circuit law). This Court's "task on mandamus is limited to seeing if there was such a clear abuse of discretion that refusing transfer amounted to a patently erroneous result." *Monolithic*, 50 F.4th at 161 (applying Fifth Circuit law). Unless there is "only one correct outcome" from "a meaningful application of the §1404(a) factors" in a particular case, mandamus is unwarranted. *Vistaprint*, 628 F.3d at 1347.

Straining to meet that standard, Core contends that the district court got five of the eight factors wrong. It quibbles with the court's case-specific weighing of local interests, Pet.14-21; alleges legal and factual errors as to the "practical problems" factor, Pet.21-27; and quarrels with the court's findings that the bulk of the relevant evidence is available electronically and that Marshall is just as or more convenient than Austin for every potential witness other than the five Core employees who live there, Pet.27-39. None of Core's complaints holds water.

## A. The district court was well within its discretion in evaluating the disputed factors.

The district court carefully analyzed each factor and found that one disfavored transfer, two only slightly favored transfer, and the rest were neutral. Appx2-13. "Having reviewed each factor, on balance," in light of the record, the court reasonably found that Core had not met its "substantial burden." Appx5, Appx13. The court's analysis reflects "a meaningful application of the §1404(a) factors" and lands comfortably within the "reasonable range of choice." *Vistaprint*, 628 F.3d at 1347. None of Core's contrary arguments establishes a clear abuse of discretion.

### 1. The district court did not clearly abuse its discretion in finding that the local interest factor was neutral.

The district court reasonably found that both districts had a similar local stake in this case. Appx11-13. Core's lead argument attacks that finding on legal and factual grounds but comes up short on both counts.

**a.** Core first contends that the district court "committed legal error" by failing to "analyze the evidence in a temporally correct manner." Pet.15. By that, Core seems to mean that as a matter of law, "ongoing conduct and evidence present in the Western District" necessarily outweighed past infringement in the Eastern District. Pet.15-17. But Core cannot find a single case adopting such a rule—let alone the binding precedent required for mandamus. *See, e.g.*, *In re Verinata Health, Inc.*, 2017 WL 1422489, at *2 (Fed. Cir. Mar. 9, 2017) (per curiam) ("clear and indisputable" right depends on "[t]he current state of the binding precedent").[1]

That is because binding precedent imposes no such rule. As Core's own cited case explains, the local interest inquiry focuses on "significant connections between a particular venue and the events that gave rise to a suit." Pet.15 (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010) (applying Fifth Circuit law)); *accord Clarke*, 94 F.4th at 511. As the past tense suggests, that includes past events. *See, e.g., In re Samsung Elecs. Co.*, 2 F.4th 1371, 1380 (Fed. Cir. 2021) (applying Fifth Circuit law) (considering where "[t]he relevant events leading to the infringement claims here took place"). After all, the factor's point is to

---

[1] *See also, e.g., In re Abbott Labs.*, 96 F.4th 371, 381 (3d Cir. 2024) (no "clear and indisputable abuse of discretion" absent "binding authority" (attribution omitted)); *In re Al-Nashiri*, 835 F.3d 110, 137 (D.C. Cir. 2016) ("[O]pen questions are the antithesis of the 'clear and indisputable' right needed for mandamus relief." (cleaned up)).

evaluate whether "the citizens of the forum have a sufficient interest in the controversy to justify burdening them with jury duty." *Chamber of Com.*, 105 F.4th at 308 (attribution omitted). Finding facts about the past and adjudicating past wrongs is what juries and federal courts do every day. Nothing supports Core's view that infringers can destroy a community's localized interest in a dispute just by fleeing the forum.

With no support from binding precedent, Core hangs its hat on this Court's statement in *In re EMC Corp.*, 501 F. App'x 973 (Fed. Cir. 2013), that transfer motions "are to be decided based on the situation which existed when suit was instituted," *id.* at 976 (cleaned up). *See* Pet.17. To start, Core ignores that statement's context, which had nothing to do with weighing local interests. Rather, the Court was explaining that district courts cannot "rely on judicial economy involved in retaining the very cases that were the subject of the transfer motion." *EMC*, 501 F. App'x at 976.

But no matter. The district court here did exactly what Core says it should have done: The court recognized that the situation "when [Malikie's] complaint was filed," Pet.17, was that Core had been allegedly infringing the asserted patents in the Eastern District for years, and the court weighed the relative local interests accordingly. Appx11-13; *supra* pp.3-4, 8. There was no error in declining to let Core "hide from the fact" of its past conduct in the forum. Appx12.

**b.** Core's quibbles with the district court's factfinding fare no better. The court was well within its discretion to find that mining 990.47 bitcoin in the Western District and 771.19 bitcoin in the Eastern District, Pet.18, amounted to "a similar share of infringing activity." Appx12-13. Core tries slicing and dicing the numbers every which way—number of bitcoins, number of mining machines, bitcoins per month, percentage differences over this range or that, dollar values—but nothing it tries adds up to an abuse of discretion, let alone mandamusable error. *Contra* Pet.18-19 & nn.4-5. Indeed, Core cannot even keep its own asserted facts straight; its bottom-line claim that "the Pecos facility outpaced the Denton facility during the relevant time period by anywhere from 50-75%" finds no support in the cited source, *see* Appx310-311, and flatly contradicts its own figures. *See* Pet.18 (starting with 28% more bitcoin and inflating the figure to 43% by considering post-complaint events, contrary to the purported date-of-the-complaint standard); *see also id.* ("more miners 70% of the time"); Pet.18-19 (monthly figures with no relationship to the asserted percentages).

At the end of the day, the court reasonably found that Core's sprawling Denton data center that employed dozens of residents and generated tens of millions in revenue from allegedly infringing activity, *see* Appx533-539, gave rise to "significant connections" between this suit and the Eastern District, *see Acer*, 626 F.3d at 1256. And it reasonably found that those connections were on par with the Western District's.

Finally, Core contends that "physical evidence[] and key witnesses currently reside in the Western District" and should have tipped the scales in favor of transfer. Pet.19-20. Core overstates both the facts, *see infra* pp.21-26 (discussing the evidence and witnesses under the private interest factors), and their significance to the analysis. Because the focus is "on the *events*—not the *parties*," "the parties' connections to the venue" do not count. *Clarke*, 94 F.4th at 511. And although witnesses' locations can be "useful proxies," those "proxies … can never subsume the ultimate inquiry" into "the interest of *non-party citizens* in adjudicating the case." *Id*. Besides, Core failed to preserve this argument in its objections to the magistrate judge's order. *See* Appx1018-1019. Objections not raised below are forfeited. *See, e.g.*, Fed. R. Civ. P. 72(a) ("A party may not assign as error a defect in the order not timely objected to."); *Garcia v. Orta*, 47 F.4th 343, 349 (5th Cir. 2022) (holding that the defendants forfeited "arguments not presented to the district court" when challenging a magistrate judge's decision).[2]

**c.** Malikie's amended complaint (and, for that matter, Core's third-party complaint) confirms the district court's conclusion. It is the operative pleadings that say which events gave rise to this suit. As this

---

[2] *See also Athena Diagnostics, Inc. v. Mayo Collaborative Servs., LLC*, 915 F.3d 743, 756 (Fed. Cir. 2019) (regional circuit law governs "waiver"); *SME Steel Contractors, Inc. v. Seismic Bracing Co.*, 2025 WL 2057365, at *9 (Fed. Cir. July 23, 2025) (applying regional circuit law to preservation under Rule 72(a)).

Court's binding precedent applying Fifth Circuit law put it, once Malikie "filed [its] amended complaint[], the original complaint[]" became a "dead letter[] and no longer performed any function in the case[]." *Samsung*, 2 F.4th at 1376 (cleaned up). "That understanding has been uniformly applied in a variety of contexts," including "for transfer under §1404(a)." *Id.* (discussing §1404(a)'s venue requirement); *accord In re RingCentral, Inc.*, 2023 WL 6368336, at *2 (Fed. Cir. Sept. 29, 2023) (no clear abuse of discretion "in resting [the] venue determination on [facts] identified in Marble's amended complaint"). There is no reason to apply that uniform rule to §1404(a)'s threshold venue inquiry while ignoring it for the convenience analysis.[3]

The operative complaint refutes Core's premise that this suit does not concern any ongoing activity in the Eastern District. Beyond Core's past infringement in Denton, the operative complaint alleges ongoing infringement through Core's substantial HPC operations there. *Supra* pp.5-6. Core's third-party complaint is likewise directed to events involving the Denton facility. *Supra* p.9. Although the district court does

---

[3] There is no tension between this point and the rule that courts cannot manufacture judicial economy interests by making progress on the merits after a transfer is requested, *see EMC*, 501 F. App'x at 976 (relying on *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960)). Looking to the operative complaint to determine what a case is about and what local interests it implicates does not present any similar concern. *See Samsung*, 2 F.4th at 1376 (distinguishing *Hoffman* because it "did not involve or address the filing of an amended complaint").

not appear to have considered them, the operative pleadings only reinforce its assessment of the relative local interests. *See Def. Distributed v. Bruck*, 30 F.4th 414, 435 (5th Cir. 2022) ("[T]he place of the alleged wrong is one of the most important factors in venue determinations." (attribution omitted)).

### 2. The district court did not clearly abuse its discretion in evaluating judicial economy.

Core next attacks the district court's finding that no "practical problems" supported transfer, asserting both that the court "incorrectly diminished the significance of Malikie's co-pending suit in the Western District" and should have "credit[ed] Core's prompt motion to transfer." Pet.21-27. The court reasonably disagreed.

**a.** There was nothing wrong with the court's conclusion that transfer would not support judicial economy. Appx10. As discussed, "[c]onsiderations of judicial economy are generally based on the situation at the time the suit was filed." *In re Google LLC*, 2021 WL 5292267, at *3 (Fed. Cir. Nov. 15, 2021) (per curiam) (citing *EMC*, 501 F. App'x at 976). Malikie filed its Western District suit the same day as this one, so there was no "familiarity with the patents and the triable issues" to take advantage of. *Contra* Pet.24-25. Later developments like which court got to claim construction first cannot change that reality. *Contra* Pet.24. Just as "progress after filing" in the case at hand generally cannot create judicial economy interests that justify denying transfer, there is no

reason to allow another case's progress while awaiting a transfer decision to wind up forcing a transfer. *See In re SAP Am., Inc.*, 133 F.4th 1370, 1374-75 (Fed. Cir. 2025) (per curiam).

Core invited the statement about *Continental Grain* that it now complains was legal error. *Compare* Appx782 (Core's reply invoking *Continental Grain*'s "precisely the same issues" point (quoting 364 U.S. at 26)), *and* Appx1018 (same in objections); *with* Pet.22 (arguing that "precisely the same issues" is the wrong standard). Regardless, even assuming that the cases present "precisely the same issues," there was no reason at the outset to favor one district over another because both cases were in their infancy, *contra* Pet.22-25. *See Clarke*, 94 F.4th at 510 ("At bottom, the transfer factors are *relative*.").

Neither precedential case Core cites says otherwise. *In re Volkswagen of America, Inc.*, 566 F.3d 1349 (Fed. Cir. 2009), found no error in keeping overlapping cases together in the district where they were filed so as to avoid creating inefficiencies by splitting them up, *id.* at 1351. So too for *Vistaprint*, where the plaintiff's chosen forum also had "substantial experience" with "prior litigation" involving the same patent. 628 F.3d at 1344. Core identifies no case compelling district courts to use §1404(a) to unite cases filed the same day in different districts just because they overlap.

**b.** Nor does it matter that Core "promptly filed" its motion. *Contra* Pet.25-27. For starters, the district court reasonably found that Core

"drop[ped]" this argument in its reply, Appx10. *See* Appx782 (Core's reply addressing only the alleged parallel case). That was reason enough to reject it. *Contra* Pet.25 (falsely asserting that "[t]he court noted Core's argument but then made no further mention of it" (citing Appx9)).

Even setting aside Core's forfeiture, the district court considered its argument and found it "unpersuasive," Appx10—and rightly so. Below, Core cited only a magistrate judge decision finding a transfer motion untimely. Appx304 (citing *Cerence Operating Co. v. Samsung Elecs. Co.*, 2025 WL 755219, at *6 (E.D. Tex. Mar. 10, 2025), *adopted*, 2025 WL 2492472 (E.D. Tex. July 25, 2025)). Core made no attempt to explain how it got from its obligation to act promptly to the view that it should get extra credit for doing so. Its petition is no better on that score. True, late motions weigh against transfer. *See, e.g., In re Google LLC,* 2021 WL 4592280, at *6 (Fed. Cir. Oct. 6, 2021) (per curiam). But Core offers no case saying that prompt motions can be (let alone must be) counted in favor of transfer. A timely filing is table stakes—not a reason to reduce the movant's heavy burden. *See id.* (finding the motion timely without suggesting that timeliness favored transfer).

**c.** Core's real complaint seems to be that the district court took too long. Pet.25-27. But it makes no argument that the court used that time as a reason for denying transfer. *Id.* Because that is not what the court did. Appx10.

If Core wanted a speedier decision, it should not have spent five months sitting around after briefing closed. By Core's own account, it first complained to the district court about the timing in February, a month before the ruling. Pet.26 n.7. If Core wanted a stay earlier, it should have asked for one. And if it thought the magistrate judge was moving too slowly, it should have sought relief from the district judge and, failing that, from this Court. *See In re Apple Inc.*, 52 F.4th 1360, 1361 (Fed. Cir. 2022) (mandamus is available "to correct a clearly arbitrary refusal to act on a longstanding pending transfer motion"). Now that Core waited for the district court's decision, it cannot complain about the timing; nothing can be done about it without a time machine.

### 3. The district court did not clearly abuse its discretion in evaluating availability of compulsory process, witness convenience, and access to proof.

Core next attempts to flyspeck the district court's factfinding as to availability of compulsory process, witness convenience, and access to proof. Pet.27-39. The record confirms the court's conclusions.

**a. Compulsory process.** Core insists that even though the court found that travel to Marshall would be more convenient for nonparty witnesses, this factor should have been neutral because those witnesses are "within the subpoena powers of both districts." Pet.27-28. Not so. The Fifth Circuit's two-sentence approval of one court's analysis does not establish any categorical rule, much less prohibit considering nonparty witnesses' convenience. *In re Radmax Ltd.*, 720 F.3d 285, 288 (5th Cir.

2013) (per curiam); *see Volkswagen*, 545 F.3d at 316 (even under the compulsory process factor, the "transfer analysis is concerned with convenience").

Core's contrary view lacks precedential support and misses the forest for the trees. Because Core asks to move the case to the venue next door, the nonparty witnesses here happen to be within both courts' subpoena range. But that they can be compelled to travel to either court does not mean the district court lacked discretion to find that the relative inconvenience of traveling to Austin compared to Marshall weighed against transfer, whether under this factor or otherwise. Far from endorsing such empty formalism, the Fifth Circuit has made clear that the factors are neither "exhaustive [n]or exclusive." *Volkswagen*, 545 F.3d at 315. After all, Core's ultimate burden was to show that the Western District is "clearly more convenient." *Id.* If the need for Core's Austin-based witnesses to take a short road trip tilts the scales toward transfer, Pet.33-34, then so too should the need for the Eastern District witnesses to do the same thing tilt against transfer.

Core next asserts that without "actual evidence of witness unwillingness," the district court had to treat this factor as neutral. Pet.30. Here, too, Core mistakes a decision finding no clear and indisputable error in one case-specific assessment with a categorical rule governing all cases—and misreads its cited authority to boot. What Core's case actually says is that the district court was within its

discretion to find this factor neutral where the petitioners "failed to identify any witnesses who would be unwilling to testify," reasoning that the factor "receives less weight when it has not been *alleged* or shown that any witness would be unwilling." *In re Planned Parenthood Fed. of Am., Inc.*, 52 F.4th 625, 630-31 (5th Cir. 2022) (emphasis added) (attribution omitted); *see Radmax*, 720 F.3d at 288-29 (no relevant discussion).

Finally, Core complains that the district court should not have considered former Core employees who concededly worked at Core's bitcoin mining facility because, according to Core, they "have little to no relevant knowledge about the bitcoin mining activities at issue." Pet.30-31. The court was within its discretion not to take Core's word for it. Appx7 (finding that the witnesses "have knowledge about … the allegedly infringing activity (bitcoin mining) that took place in this District"). Core provided no evidence about any specific former employees' knowledge; it pointed only generally to their job titles. Appx781 & n.6; Appx786-91. This Court's decision in *In re Google LLC*, 58 F.4th 1379 (Fed. Cir. 2023), is not to the contrary. There, unlike here, "Google provided sworn, unequivocal deposition testimony from each employee explaining that none of them work on the accused features." *Id.* at 1384.

**b. Witness convenience.** Core complains that the district court "erroneously minimized" the inconvenience to its witnesses by "relying

on *Kranos IP* … for the proposition that the convenience of party-employee witnesses is not as important." Pet.32-34. But that was what Core invited the magistrate judge to do. Appx303-304 (Core "understands that the Court 'gives the convenience of employee witnesses less weight' … ." (quoting *Kranos IP Corp. v. Riddell Inc.*, 2017 WL 3704762, at *12 (E.D. Tex. Aug. 28, 2017)). So it is no surprise that Core failed to object on this basis. *See* Appx1016-1017. Because Core first invited and then failed to object to the claimed error, the argument it now makes for the first time on mandamus is forfeited. *See, e.g.*, *Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 1373 (Fed. Cir. 2017) ("[A] party may not complain on appeal of errors that he himself invited or provoked the court to commit." (cleaned up)); Fed. R. Civ. P. 72(a).

As for witnesses outside Austin, the district court reasonably found their convenience to be a wash under the Fifth Circuit's 100-mile rule. Appx9. That the court did not give weight to Core's two traveling witnesses' preference for working from Core's Austin office rather than a hotel was not a clear abuse of discretion; Core's own witness testified that Core's employees can access their work online, Appx544, and Core does not suggest otherwise.

Core also suggests that the convenience of witnesses who live in neither forum must be ignored. Pet.32-33. Binding Fifth Circuit precedent says otherwise. *In re TikTok, Inc.*, 85 F.4th 352, 361-62 (5th Cir. 2023) (holding that the district court clearly abused its discretion in

failing to conclude that, for witnesses in China, California was closer and therefore more convenient than Texas).

**c. Access to proof.** Finally, Core complains that the district court should have weighed access to proof "strongly," rather than slightly, in favor of transfer. Pet.37. The court was right to reject its view.

The court correctly found that the Western District had no relative advantage over the Eastern District in accessing electronic documents—the bulk of the evidence. Appx5-6; Appx540-541. Core's "own witness identified" the electronic evidence Core relies on as "stored on cloud servers" that are "equally accessible" in both districts. Appx6; *see Planned Parenthood*, 52 F.4th at 630-31 (no error in finding that electronic evidence was "equally accessible in either forum"). Core's cited case is not to the contrary; *TikTok* involved genuine barriers to accessing source code, *see* 85 F.4th at 359 ("source code [was] the most important evidence" and was more accessible from the transferee forum because "employees with [the necessary] security clearance" were there). Here, Core concedes that the relevant "code is available through the cloud and can be (and has been) made available at other locations." Pet.38.

Nor do any of Core's arguments undermine the finding that any benefit of inspecting the physical mining machines is "minimal" in light of this suit's focus on software and firmware that "is again equally accessible from cloud servers (where it is stored) and websites." Appx6; *see Planned Parenthood*, 52 F.4th at 630 ("The location of evidence bears

much more strongly on the transfer analysis when … the evidence is physical in nature."). Core's speculation about a "potential need to inspect those machines" for unspecified purposes, Pet.38, falls far short of making it "plainly obvious" that any "marginal gains" in convenience "will *actually* materialize in the transferee venue." *Chamber of Com.*, 105 F.4th at 304. In any event, there is no dispute that Core houses the accused HPC machines in Denton. *Supra* p.5.

**B. The district court was well within its discretion in weighing—and not merely counting—the factors.**

Finally, Core hints in passing that because two factors slightly favored transfer and one disfavored it, the raw counting of factors should have carried the day. *See* Pet.39. But as Core's own cases confirm, the Fifth Circuit has long "cautioned against a raw counting of the factors that weighs each the same" or that gives any one factor "dispositive weight." *Clarke*, 94 F.4th at 509 (cleaned up); *accord Radmax*, 720 F.3d at 290 n.8 ("We do not suggest—nor has this court held—that a raw counting of the factors in each side, weighing each the same and deciding transfer only on the resulting 'score,' is the proper methodology."). Section 1404(a) instead "commits the balancing determination to the sound discretion of the trial court based not on per se rules but rather on an 'individualized, case-by-case consideration of convenience and fairness.'" *Vistaprint*, 628 F.3d at 1346 (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). Indeed, the Supreme Court "has repeatedly

rejected the use of per se rules in" this context. *Id.* (collecting cases). This aversion to bright-line rules is no mere "formality"; rather, it reflects "a longstanding recognition that a trial judge has a superior opportunity to familiarize himself or herself with the nature of the case and the probable testimony at trial, and ultimately is better able to dispose of these motions." *Id.*

Just as in *Vistaprint*, the district court here conducted a "thorough analysis" and made its decision "based on an individualized, case-by-case consideration of the relevant factors, balancing convenience and efficiency." 628 F.3d at 1347 (cleaned up). That does not add up to mandamus. This is far from a case with "[w]ith nothing on the transferor-forum side of the ledger," Pet.39 (attribution omitted), or with "no connection" to the plaintiffs' chosen forum, *Radmax*, 720 F.3d at 290.

***

For all these reasons, Core cannot establish a clear abuse of discretion and therefore has not demonstrated a "clear and indisputable" right to relief. *Cheney*, 542 U.S. at 381 (attribution omitted).

## II. Mandamus Is Not Appropriate Under the Circumstances.

In any event, Core cannot establish "that the writ is appropriate under the circumstances," as *Cheney*'s third requirement mandates. 542 U.S. at 381. Core does not even try—nor would it have succeeded.

## A. Core's neglect of the "appropriate under the circumstances" requirement is reason enough to deny mandamus.

Despite unambiguous Supreme Court precedent requiring a finding "that the writ is appropriate under the circumstances," *Cheney*, 542 U.S. at 381, Core ignores this requirement. The closest Core comes is its unexplained contention that "grant of the writ is appropriate here," Pet.40, plus a hint in its standard of review section that the requirement does not apply to §1404(a) cases, Pet.11. That is not the law.

To be sure, Core identifies one case in which this Court observed that the test "essentially reduces to the first factor" in §1404(a) cases. *In re Apple Inc.*, 979 F.3d 1332, 1336-37 (Fed. Cir. 2020); *see* Pet.11. But Core is wrong to read that passing observation as a categorical rule. As the Court's choice of "essentially"—and not, say, "necessarily" or "categorically"—suggests, deciding that there was nothing beyond the merits to consider in one particular §1404(a) dispute is a far cry from holding that there can never be.

**1.** For starters, nobody in *Apple* advanced any discretionary considerations. The petitioner asserted incorrectly that under Fifth Circuit law, the third requirement is satisfied whenever a district court reaches a "patently erroneous result." *Compare* Petition for Writ of Mandamus at 10-11, *Apple*, 979 F.3d 1332 (No. 20-135), Dkt.2-1 (citing *Volkswagen*, 545 F.3d at 310-12, 318-19); *with Volkswagen*, 545 F.3d at 310-12 (setting out the *Cheney* requirements), *and id.* at 318-19 (separately analyzing the third requirement after finding the others

28

satisfied). The respondent addressed only the "clear and indisputable right" requirement. Non-Confidential Response to Petition for Writ of Mandamus at 6, *Apple*, 979 F.3d 1332 (No. 20-135), Dkt.34. So the Court had no occasion to—and thus presumably did not—adopt a categorical rule eliminating the third requirement.

**2.** More fundamentally, Core's reading would require this Court to conclude that in a single sentence applying Fifth Circuit law, the *Apple* Court created a conflict with the Supreme Court's *Cheney* decision, this Circuit's precedent, and its sister circuits—including the Fifth. The Court did no such thing.

Start with the cases *Apple* cited. 979 F.3d at 1336-37 (citing *In re McGraw-Hill Glob. Educ. Holdings*, 909 F.3d 48, 56 (3d Cir. 2018); and *In re TS Tech USA Corp.*, 551 F.3d 1315, 1322 (Fed. Cir. 2008)). Neither supports Core's categorical rule. Although *McGraw-Hill* explains why transfer cases categorically satisfy other requirements, the "third factor" that it described as "collaps[ing] into" the merits was the Third Circuit's "irreparable injury" requirement—not this Court's (and *Cheney*'s) third requirement. 909 F.3d at 56 (attribution omitted). The Third Circuit went on to note, consistent with *Cheney*'s third requirement, that it "retain[s] discretion to deny the writ even in the face of [clear and indisputable] errors." *Id.* at 57.

Likewise, this Court's *TS Tech* decision recognized that "the 'no other means' requirement" is satisfied in §1404(a) cases, but it went on to apply

*Cheney*'s separate discretionary requirement. *See* 551 F.3d at 1322-23 (finding "that the district court clearly abused its discretion" and then separately "determin[ing] that mandamus relief is appropriate in this case"); *accord In re Nintendo Co.*, 589 F.3d 1194, 1201 (Fed. Cir. 2009) (same); *In re Genentech, Inc.*, 566 F.3d 1338, 1348 (Fed. Cir. 2009) (same). The *Apple* panel did not purport to overrule these cases. Nor could it have. *Smith ex rel. Hicks v. McDonough*, 112 F.4th 1357, 1364 (Fed. Cir. 2024).

What's more, on Core's reading, *Apple* would clash with the very regional circuit whose law it was applying. *Apple* applied Fifth Circuit law as articulated in *Volkswagen. See Apple*, 979 F.3d at 1336. That en banc decision leaves no doubt that *Cheney*'s third requirement means what it says in §1404(a) cases as in any others. *Volkswagen*, 545 F.3d at 319 (separately analyzing the third requirement and finding it satisfied).

In sum, Fifth and Federal Circuit law alike comply with *Cheney*: "[E]ven if" a court finds the first two requirements satisfied, it must still consider whether "the writ is appropriate under the circumstances." 542 U.S. at 381. This Court would be well within its discretion to deny Core's petition for skipping this requirement.

### B. Mandamus is inappropriate in light of the amended and third-party complaints filed after briefing concluded.

Core's petition seeks nothing more than case-specific error correction. Core presents no issue with any "importance beyond this case." *Cf.*

*Volkswagen*, 545 F.3d at 319. Nor do the issues have any practical importance in this case. Even if Core could establish error in the district court's decision based on the original complaint, the amended and third-party complaints made any error harmless. Both Malikie's amended allegations and Core's own third-party allegations refute Core's central contention in support of transfer: that this case's connection to the Eastern District rests in the past. It is now beyond dispute that this case involves ongoing activity in the Eastern District, undermining Core's arguments on every contested factor.

As discussed, Malikie's amended complaint made the original complaint on which Core's argument rests a "dead letter[]" that "no longer perform[s] any function in [this] case[]." *Samsung*, 2 F.4th at 1376 (cleaned up); *supra* pp.16-18. That now-operative complaint—plus Core's third-party complaint stemming from it—puts Core's case for transfer to rest. This Court should not deploy "one of the most potent weapons in the judicial arsenal" to second-guess the district court's evaluation of a set of facts that no longer exists. *Cheney*, 542 U.S. at 380 (cleaned up).

Start with the amended complaint. Filed after the transfer briefing was completed, the amended complaint alleges that Core infringes two of Malikie's patents—one that has been in the case all along, and one newly asserted—in connection with Core's HPC operations at its Denton facility in the Eastern District. SAppx86-88(¶¶161-64, 168-72). Core expanded its Denton data center to provide infringing HPC services there.

SAppx47-55(¶¶48, 54-56, 60). The expansion will result in "one of the largest GPU supercomputers in North America." SAppx47-48(¶48). As a result, Malikie's infringement claims arise in part from Core's ongoing HPC activities in Denton. SAppx77(¶126), SAppx79(¶132).

Core's third-party complaint deepens this case's Eastern District roots. That complaint brings CoreWeave, the customer occupying Core's Denton data center, into this case. SAppx93-94(¶¶1-2), SAppx100-102(¶¶23-31). Core's third-party complaint acknowledges that Malikie "allege[s] infringement by [Core] based on [Core's] tenant CoreWeave performing high-performance computing ('HPC') in one or more of [Core's] data centers." SAppx93-94(¶1); *see also* SAppx96-97(¶¶11-12) (acknowledging infringement allegations based on hosting and use of NVIDIA GPUs and DPUs). Core contends that if it is held liable "by virtue of the HPC activities of CoreWeave," then Core "is entitled to indemnification from CoreWeave through one or more agreements" in which Core "grant[ed] CoreWeave a license to use [Core's] data center(s) for CoreWeave's HPC operations." SAppx94(¶2). One of those data centers is, of course, the Denton data center identified in Malikie's amended complaint, where, according to Core, "CoreWeave does business" and "has installed HPC devices and equipment, including NVIDIA GPUs for HPC operations." SAppx96(¶8), SAppx98(¶16); *see also* SAppx98(¶18) (alleging that "CoreWeave owns HPC devices

including the accused NVIDIA GPUs and DPUs that are hosted at [Core's] data centers").

These developments underscore that the district court was right to deny transfer and thus that this Court should deny mandamus. But at the very least, they narrow the scope of any appropriate relief. There is no reason to direct transfer without first considering how the amended and third-party complaints—both of which came after briefing wrapped up—affect the transfer analysis. Nor is there any reason for this Court to do so in the first instance, let alone in a mandamus posture and without the benefit of discovery. So even if Core could satisfy the mandamus requirements, the most it should get is vacatur and a remand for the district court to reconsider in light of the now-operative pleadings.

# CONCLUSION

This Court should deny the petition.

Respectfully, submitted,

/s/ Khue V. Hoang

Brian C. Baran  
Philip J. Eklem  
REICHMAN JORGENSEN  
  LEHMAN & FELDBERG LLP  
1909 K St. NW, Suite 800  
Washington, DC 20006  
(202) 894-7310  
bbaran@reichmanjorgensen.com

Khue V. Hoang  
REICHMAN JORGENSEN  
  LEHMAN & FELDBERG LLP  
650 Fifth Avenue, Suite 2320  
New York, NY 10019  
(212) 381-1965  
khoang@reichmanjorgensen.com

Matthew G. Berkowitz  
REICHMAN JORGENSEN  
  LEHMAN & FELDBERG LLP  
100 Marine Parkway, Suite 300  
Redwood Shores, CA 94065  
(650) 623-1401  
mberkowitz@reichmanjorgensen.com

*Counsel for Respondents*  
*Malikie Innovations Ltd. and Key Patent Innovations Ltd.*

May 20, 2026

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2026-140

**Short Case Caption:** In re Core Scientific, Inc.

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes __7,762__ words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: __05/20/2026__

Signature: /s/ Khue V. Hoang

Name: Khue V. Hoang